# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,        )
                           )
        v.                )      ID#: 1312014951
                           )
JEROME MADISON,         )
      Defendant.        )

## ORDER

**Upon Defendant's Motion to Suppress -- DENIED;**
**Upon Defendant's Motion for Full Psychological Evaluation – DENIED;**
**Upon Defendant's Motion to Reduce Bail – DENIED;**
**Upon Defendant's Counsel's Motion to Withdraw – DENIED.**

1.      On the morning set for trial, June 24, 2014, Defendant filed the above-named motions. As a result, the trial in this major sex-case was continued over the State's objection, at literally the last minute. As discussed below, the motions are all out of order because they violate a "firm" motion deadline imposed by the court. The court also sees that they are borderline frivolous. As recited next, the history leading-up to these last-minute motions brings their untimely, disruptive nature into sharp relief.

2.      On December 24, 2013, over six months ago, Defendant was arrested for rape, home invasion, kidnaping, possession of a firearm during a felony,

and related, less-serious charges involving a female and a male complaining witness. At the time, admittedly after receiving and acknowledging *Miranda* warnings, Defendant made a 50-minute, recorded, incriminating statement.

3.     Defendant appeared for a preliminary hearing on January 10, 2014. He was indicted January 21, 2014 and he appeared for arraignment with court-appointed counsel on February 18, 2014. Consistent with the scheduling order issued February 27, 2014, Defendant appeared with privately retained counsel at case reviews on March 24 and June 16, 2014. Thus, it seems the final case review on June 16, 2014 was at least Defendant's fourth court appearance with two, separate lawyers.

4.     In the almost six months leading to the final case review, neither defense lawyer moved to suppress Defendant's statement nor suggested that they had reason to file notice of a mental illness defense. Not until the final case review did counsel mention a retrospective competency determination. Further, Defendant, who is 35, has been neither treated for nor diagnosed with mental illness.

5.     On June 18, 2014, after counsel mentioned mental illness and suppression at the June 16, 2014 final case review, the court issued another scheduling order. The order gave defense counsel a "firm motion deadline ending on June 23, 2014," the day *before* trial. Instead of obeying the order, counsel filed a continuance request on June 23, 2014. Only after business hours were the motion

papers left with the Prothonotary when, as a practical matter, it was too late to docket them and refer the paperwork to the assigned judge, the undersigned. Accordingly, the papers were docketed the next morning, mere hours before the trial's scheduled start and too late for even cursory review.

6. Even if the court had not issued an order, what makes Defendant believe it is appropriate to file a flurry of motions and a continuance request on the morning of trial? How can the court administer justice in an "I can do as I please" environment?

7. Instead of first filing a continuance motion to his liking and then filing the above-named motions as the court insisted, counsel filed the motions out of order, placing Defendant's interest in a continuance over the court's interest in addressing the motions in an orderly way. "Firm" means firm. Defendant's motions were filed too late, so they are **DENIED**.

8. As a courtesy and for completeness, the court mentions that it is not oblivious to the motions. The court observes that generally counsel is presumed effective. Consistent with that presumption, the court takes notice that defense counsel is among the most experienced and effective criminal defense lawyers. By the same token, the court presumes counsel did not wait to file the motions to stymie the court. Again, that is not how this defense attorney practices. Yet, counsel has

offered nothing, much less an admission that he is to blame for not seeing sooner that Defendant had a potentially meritorious suppression motion and a retrospective mental examination was appropriate. If counsel stood behind the motions, he would have explained why he took so long to file them. As suggested above and discussed below, these motions seem merely intended to appease Defendant, not to vindicate his rights.

9. Specifically, as to suppression, the motion rests entirely on Defendant's last-minute claim that in December he incriminated himself because he had "overdosed" on prescribed narcotics. Besides his self-serving, conclusory statement made at an unspecified time to his counsel, and his "highly emotional and volatile" demeanor during the entire interrogation, Defendant's only support is an April 21, 2014 letter from his pain management doctor confirming that the doctor prescribed Oxycontin and Percocet for Defendant on December 16, 2013, eight days before the incident and Defendant's interrogation, and mentioning that Defendant "can also have impaired judgment while on these narcotic medications." That's it.

10. Despite having had the doctor's letter since April, counsel has not submitted an expert opinion or anything along the line that Defendant's behavior at the time of the incident and during the recorded interrogation appears consistent with Defendant's new claims. At trial, Defendant may present evidence that his statement

is untrustworthy.  Meanwhile, it seems far-fetched that he was so intoxicated he did not understand the *Miranda* warning, nor did he know what he was doing when he chose to speak with the police.

11.    As for a full mental evaluation, the support for that boils down to Defendant's voluntary substance abuse and his *cri de coeur* upon reviewing his police statement, "That's not me.  If it is, I was out of my mind."  But, Defendant is 35.  He has never been under a psychiatrist or psychologist's care.  And, neither of his counsel has reported seeing any behavior justifying a full examination.

12.    As to reducing bail, Defendant offers no new reason for that.  To the contrary, Defendant is now claiming that he has a substance abuse problem and maybe even an unspecified and heretofore undiagnosed major mental illness.  At this point, the court is focused on getting this case resolved as soon as possible. Defendant's bail motion is another distraction.

13.    Finally, as to withdrawal, the court appreciates that defense counsel has not been paid recently, and Defendant has become obstreperous and he may intend to testify untruthfully.  As mentioned, however, counsel is among the most skilled and experienced.  Difficult and dishonest clients are nothing new to seasoned defense attorneys.

14. The court will hold a hearing for the airing of grievances. But, there is no reason to think a third lawyer will fare better than the first two, and appointing one would just be a misuse of limited resources and mean further delay. Moreover, because Defendant is in custody, which makes trial preparation problematic, and considering the charges' nature, which makes witness examination delicate, it is hard to believe Defendant would be so foolhardy as to ask to represent himself. Besides, if he has major mental illness as he now insists, how could he assert his right to self-representation?

For the foregoing reason, untimeliness, Defendant's day-of-trial motions are **DENIED**. The court will consider how to move forward at a status hearing. Meanwhile, if Defendant wants to be heard, he must still speak through his retained counsel.

**IT IS SO ORDERED**.


Date: __June 27, 2014__ __/s/ Fred S. Silverman__
Judge



cc: Prothonotary (Criminal)
Karin Volker, Deputy Attorney General
James R. Natalie, Jr., Esquire
Jerome Madison, Defendant

-6-